245 So.2d 751 (1971)
Alma THOMPSON
v.
Dr. Walter H. BRENT et al.
No. 4317.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1971.
*752 Pierre F. Gaudin, Gretna, for plaintiff-appellee.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Albert H. Hanemann, Jr., New Orleans, for defendants-appellants.
Before REGAN, CHASEZ, and TAYLOR.
TAYLOR, Judge.
The plaintiff-appellee, Alma Thompson, filed suit for personal injuries against the defendants, Dr. Walter H. Brent, his medical assistant, Mrs. Sally Doming, and the doctor's liability insurer, St. Paul Fire and Marine Insurance Company. In her petition she alleges that while under the doctor's treatment, his medical assistant removed a plaster of paris cast from her arm in a negligent manner. As a result of this alleged negligence her arm was cut and today bears a residual scar approximately four inches in length and one-sixteenth inch in width. The trial court awarded plaintiff-appellee a judgment in the amount of $400.00. From this ruling the defendants prosecute this appeal. Plaintiff does not seek an increase in the amount awarded by the trial court.
In removing the cast, Mrs. Doming utilized what is known as a Stryker saw. The Stryker saw is an electric powered, hand operated tool which has a small discshaped saw blade at the end. It does not rotate 360 as a normal electric powered saw but rotates only a few degrees in one direction and rotates back a few degrees in the opposite direction. Both rotating motions are at a high rate of speed and provide the cutting action against a hard surface, in this case the cast. The Stryker saw is designed to cut hard and unyielding surfaces but will not readily cut softer and yielding surfaces such as the skin. Pressure must be exerted in order for the saw blade to penetrate hard plaster. Once through the plaster and if pressure is not lessened it is possible for the blade to come in contact with the skin and cause injury.
It is admitted by all medical witnesses and by both counsel that a Stryker saw is utilized by the medical profession as it is the accepted instrument for the removal of plaster of paris casts. It is further admitted that the use of the Stryker saw by a *753 medical assistant as opposed to the doctor himself is the accepted medical practice in this area. There was no attempt to show that the medical assistant hired by the doctor was in any way incompetent or lacked the degree of skill necessary in the use of this instrument and the record shows that this medical assistant was certainly qualified in the operation of the Stryker saw.
The first question thus to be resolved is whether or not Mrs. Sally Doming, Doctor Brent's medical assistant, was negligent in her use of the Stryker saw in removing Mrs. Thompson's cast.
In Norton v. Argonaut Insurance Company, La.App., 144 So.2d 249 (1962) our brothers on the First Circuit discussed the standard of care which a nurse must observe in performing services of a professional nature in the treatment of a patient. In that case the court held that the same rules which govern the duty and liability of physicians in the performance of professional services to their patients apply to nurses as well. We are of the opinion that the foregoing rule is reasonable and sound. We need therefore consider the degree of care which would have been demanded of the doctor had he removed the cast himself in order to determine whether or not Mrs. Doming was negligent.
The jurisprudence is well settled with regard to the duty owed by a treating physician to his patient. As our Supreme Court succinctly stated in Meyer v. St Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1953):
"A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case." at p. 782.
Therefore if Mrs. Doming met the aforementioned standard, she must be considered free from negligence and absolved from all legal liability for Mrs. Thompson's injury.
In his reasons for judgment the trial court found that "injuries of this type would not normally occur if the cast removing apparatus is operated with a minimum degree of skill and care and that defendant, Mrs. Sally Doming was negligent in the performance of her duties." After a careful reading of the record, we find no manifest error on the part of the lower court in reaching this conclusion.
All expert witnesses who testified agreed that an abrasion or a nick might occur as a result of removing a cast with the Stryker saw. However they further agreed that such an abrasion or nick normally occurs in only ten per cent of the cases in which a cast is removed. In other words, it is the exception rather than the rule for a patient to be so injured. Furthermore when an abrasion does occur, it is because of the interaction of three factorsthe heat and the motion of the saw blade and the pressure exerted by the technician during the cutting process.
Plaintiff complained most vehemently to Mrs. Doming almost from the outset of the removal procedure that her arm was being cut. In each instance plaintiff was told that it was only the heat of the blade she was feeling and that she was not being injured. Mrs. Doming admits that despite the fact that plaintiff complained she continued to use the same amount of pressure in handling the saw. This is contrary to the normal procedure as outlined by Dr. Brent who stated that when the patient complained in such a manner, the technician should first cease the cutting operation thereby allowing the blade to cool somewhat and on resuming the cutting process should use less pressure *754 than before since pressure is a major factor in causing injury.
Furthermore, Mrs. Doming should have realized that she was causing damage to plaintiff before she completed the cutting procedure. It was plaintiff's uncontroverted testimony that before Mrs. Doming completed the cutting operation, there was blood visible on the layer of cotton just under the plaster of paris cast. It is our opinion that the presence of blood together with plaintiff's protestations of pain were sufficient indications to inform Mrs. Doming that plaintiff was being injured. This being the case Mrs. Doming should have taken steps to prevent plaintiff's further injury. However she ignored the plaintiff and continued to remove the cast using the same amount of pressure which she should have realized was causing and/or contributing to Mrs. Thompson's injury. The result is that plaintiff received an injury which has left her with a residual scar almost the same length as the cast itself and the width of the saw blade. Accepting the fact that it is possible for a patient to receive a slight abrasion during the course of removing a cast when the technician is exercising due diligence in performing his job, we do not think that a technician is exercising due diligence when the injury inflicted runs the entire length of the cast which was removed. We feel that this is especially true when we consider that the vast majority of persons having such casts removed are not expected to be injured at all during the procedure. We are therefore of the opinion that Mrs. Doming did not follow the recommended procedure which others of the same profession would have followed when the patient complained of injury. Therefore we find Mrs. Doming was guilty of negligence.
The second question to be resolved is whether or not the injury plaintiff sustained was an abrasion or something of a more serious magnitude. If the injury were greater than an abrasion, it was not such an injury as one might expect to experience if the technician were using the requisite skill in operating the machine. The trial court determined, after hearing the medical testimony and viewing the scar, that "plaintiff's injuries were of a more serious nature than minor abrasions." Again we find no manifest error on the part of the lower court.
It must be noted that the only individuals to view the injury at the time it occurred were the parties to this suit. The injury was not so severe as to require additional treatment other than that given by Dr. Brent at the time it occurred. However only Dr. Brent, Mrs. Doming and plaintiff can testify regarding the state of the injury at the time it occurred in order for the court to determine if the wound was something more than an abrasion.
All expert witnesses agree that an abrasion is a brush-burn type injury occurring when the top layer of skin, the epidermis, is violated. A superficial abrasion does not generally leave a scar nor does such an injury bleed for a prolonged period of time. Mrs. Doming testified that in the seven years she had been doing such work she had never seen permanent scarring result from an abrasion sustained during the removal of a cast. Plaintiff's expert witness, Dr. Stumpf, testified that he likewise has never seen a scar result from the removal of a cast with a Stryker saw. Moreover an abrasion does not normally bleed for more than ten to fifteen minutes after the injury according to one medical expert and yet the testimony is uncontroverted that plaintiff's wound was bleeding an hour later. Dr. Brent himself expressed surprise in his testimony that such was the case. We are of the opinion that, all factors considered, especially the residual scar and the length of time the wound bled, the injury plaintiff sustained was something more than an abrasion. This being the case it was a greater injury than one could expect to receive if the technician were properly using the Stryker saw and is further evidence of Mrs. Doming's negligence.
*755 We hasten to add at this point that there were no acts of negligence alleged on the part of Dr. Brent. Nor did counsel attempt to introduce any evidence which might prove fault of any kind on the part of the doctor. Dr. Brent's only liability is a vicarious one under the provisions of LSA-C.C. art. 2320. The doctrine of respondeat superior makes him responsible for the negligent acts of his employee while engaged in the course and scope of her employment, despite the fact that the doctor himself is totally free from personal negligence or fault.
For the foregoing reasons the judgment of the trial court is affirmed. Costs of this proceeding to be borne by defendants-appellants.
Affirmed.