394 So.2d 1321 (1981)
A. L. BRYAN, Jr., and First of Georgia Insurance Company
v.
Therman C. VARNADO, d/b/a ABC Heating and Cooling Company and Fireman's Fund Insurance Company.
No. 13881.
Court of Appeal of Louisiana, First Circuit.
January 26, 1981.
*1322 Carolyn Pratt Perry, Baton Rouge, for plaintiffs-appellants A. L. Bryan, Jr., and First of Georgia Ins. Co.
Ronald A. Seale, Baton Rouge, for defendants-appellees Therman C. Varnado d/b/a ABC Heating & Cooling Co., and Fireman's Fund Ins.
Before ELLIS, COLE and WATKINS, JJ.
ELLIS, Judge.
On January 18, 1977, plaintiff A. L. Bryan, Jr., called defendant Therman C. Varnado, doing business as ABC Heating and Cooling Company, to do some repair work on his heating unit. Mr. Varnado came to plaintiff's house and inspected the unit, and determined that a new fan limit control switch was needed. On the next day, the switch was installed, and the unit run through several cycles to see if it was functioning properly.
About 20 minutes after Mr. Varnado left, plaintiff's wife heard an explosion. She ran to the entranceway and saw black smoke and flame at the return air duct, about halfway up the stairs to the second floor. She noticed that the stair railing had been blown off the wall by the explosion.
As a result of the fire, the house was damaged to the extent of $48,993.46. This suit is by Mr. Bryan and his fire insurance carrier, First of Georgia Insurance Company, against Mr. Varnado and his insurer, Fireman's Fund Insurance Company, for the amount of the loss. Trial on the merits was held, and, after plaintiffs rested, defendants moved for a directed verdict. The motion was granted, and plaintiffs' suit dismissed. Plaintiffs have appealed.
Mr. Varnado stated that he had serviced the Bryans' unit several times, but never the heating part of it. He had worked on the cooling part and on the fan. He further testified that when he answered the call on January 18, he found that the fan limit control switch had been tampered with, and determined that it had to be replaced. Not having one with him, he re-set the old switch, which seemed to operate properly, and ran the heater through about three cycles. The next afternoon he returned, and installed the new switch. He checked the burners and found them all to be burning properly, with a blue flame. He ran the heater through three cycles and found it to be operating properly.
After the fire, the heater was examined, while still in place, by Dr. Gerald D. Whitehouse, a Professor of Mechanical Engineering, who testified as an expert witness. He did not inspect the burners. After his inspection, Dr. Whitehouse expressed the opinion that the fire was probably caused by a failed gas control valve. He also stated in his report that the servicing of the heater by Mr. Varnado could not be directly related to the fire, and that there would have been no indication at the time of the servicing that the failure of the gas control valve was going to occur. Dr. Whitehouse also testified that, if the burners were clogged, a delayed ignition would occur, which could have caused an explosion.
Harold Myers, a mechanical engineer, also testified as an expert witness. He inspected the unit about one year after the fire. It was found upside down on some boards in Mr. Bryan's back yard, covered with Visqueen. He removed the burners *1323 from the unit, looked at them, turned them upside down and shook them, and then replaced them in the unit. He found rust all over the unit, and rust on the burners. He found a small amount of rust in the burners.
He was of the opinion that, at the time of the explosion, there must have been a large amount of rust in the burners which fell off when the unit was moved out of the house and turned upside down. The amount of rust he found at the time of his inspection was insignificant, and would not have interfered with the operation of the burners. He had initially been of the opinion that the explosion was caused by late ignition resulting from clogged burners. However, he further said that an explosion resulting from late ignition would not normally be of sufficient force to blow the stair railing off the wall. He also stated that if the burners were burning with a steady blue flame, they would not have been clogged. Ultimately, he stated that he was unable to testify that the fire resulted from delayed ignition. He had no opinion as to the most probable cause of the fire, but did testify that it was not caused by the installation of the fan limit control switch.
Charles O'Brien, an expert heater mechanic, testified as to the procedure to be followed in checking a unit of the type and age involved in this suit. He testified that it would be necessary to clean the burners, but later testified that this would not be necessary if the burners were burning with a steady blue flame.
The trial judge found no facts which indicated any negligence on the part of the defendant, and dismissed plaintiffs' suit. In this court, plaintiffs contend that the trial court erred in failing to apply the doctrine of res ipsa loquitur and in failing to apply Article 2317. It is further contended that the findings of fact by the trial court were manifestly erroneous, and that the evidence was not properly reviewed in rendering a directed verdict.
The doctrine of res ipsa loquitur is a rule of evidence, applicable in circumstances when the cause of the accident by which the damage was inflicted is more properly within the knowledge of the defendant. When the doctrine is applicable, the accident itself makes out a prima facie case, and the burden is on the defendant to show that he is free from negligence. If the doctrine is to be applied, all of the facts and circumstances of the case must indicate that the negligence of the defendant, rather than the other factors, is the most likely explanation of the accident. If, however, it appears that other explanations of the accident are as reasonable as defendant's negligence, the doctrine of res ipsa loquitur does not apply. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972); Aetna Casualty & Surety Co. v. Rothman, 331 So.2d 81 (La.App. 1st Cir. 1976).
In this case, plaintiffs ask us to apply the doctrine of res ipsa loquitur, because, it is claimed, the record shows that defendant had serviced and repaired the heating unit only 20 minutes before the fire and because there was no other reasonable cause for the fire.
Of the two experts who testified for plaintiffs, one had expressed the opinion that the fire was due to a failed automatic gas valve, an occurrence of which defendant would have had no indication; and the other was unable to give an explanation for the explosion. Neither of them thought that the switch installed by defendant was in any way connected with the fire. No witness was able to point to any substandard conduct on the part of defendant in the procedures followed by him in servicing the heater.
The trial judge, in his reasons for judgment, stated that he did not know what caused the explosion and fire, but that under all of the circumstances, he did not believe that defendant's negligence was the most probable cause. We think his conclusion is fully supported by the evidence, and that he properly refused to apply the doctrine of res ipsa loquitur.
Nor do we find Article 2317 of the Civil Code to be applicable to this case. As *1324 interpreted by Loescher v. Parr, 324 So.2d 441 (La.1975), liability attaches to one if another is injured by a defective thing of which one has custody, and which creates an unreasonable risk of harm. The heater in this case was serviced by defendant, but he was never its custodian. The article has no application.
Plaintiffs further allege that the defendant was negligent in failing to warn that the burners on the heater should have been cleaned periodically, and that rust accumulating in the burners could cause a delayed ignition explosion and a resultant fire, and that the trial judge was manifestly erroneous in finding otherwise. We find no error in the factual conclusion of the trial judge. The expert who advanced the opinion relative to the delayed ignition theory changed his opinion on the witness stand, and there was no other evidence to support this theory.
Finally, plaintiffs claim that the trial judge applied an improper standard for review to the evidence in granting the motion for a directed verdict. It is urged that, under Article 1810(B) of the Code of Civil Procedure, the judge should view the evidence in the light most favorable to plaintiff in ruling on a motion for a directed verdict. This is a standard of review applicable in jury trials. See Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir. 1979); Ragas v. Argonaut Southwest Ins. Co., 379 So.2d 822 (La.App. 4th Cir. 1980). However, in judge-tried cases, a different standard is applied, and the judge may render a judgment based on the preponderance of evidence. Sevin v. Shape Spa for Health & Beauty Inc., 384 So.2d 1011 (La.App. 4th Cir. 1980). This is the standard properly applied by the judge in this case.
The judgment appealed from is therefore affirmed, at plaintiff's cost.
AFFIRMED.