424 So.2d 1152 (1982)
SUCCESSION OF Gertrude Toles JACQUE.
No. 82 CA 0270.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
Writ Denied February 23, 1983.
Michael C. Palmintier of Haymon & Palmintier, Baton Rouge, for plaintiff-appellant Harriet Landry.
Samuel C. Cashio, Cashio & Ward, Maringouin, for defendant-appellee William E. Jacque.
Before COVINGTON, LEAR and LANIER, JJ.
LANIER, Judge.
This is an action to annul a probated olographic will alleging that the testatrix was unable to read and write sufficiently well to understand the purport of her will. After the plaintiff completed the presentation of her evidence, the sole legatee moved for a directed verdict to dismiss the suit *1153 because the plaintiff failed to show a right to relief by the law and the facts. La.C. C.P. art. 1810(B). The trial judge granted the motion and this devolutive appeal followed.

I. FACTS
Mrs. Gertrude Toles Jacque died testate where she resided in Iberville Parish on August 2, 1977. At the time of her death, she had neither ascendants nor descendants, but was survived by her husband, William E. Jacque, Jr. Her last will and testament, dated February 4, 1970, was in the olographic form and left all of her property to her husband. On July 24,1978, the will was probated pursuant to La.C.C.P. art. 2883. William E. Jacque, Jr. was placed in possession of the decedent's property by judgment dated April 25, 1979. This action to annul the probated olographic testament was filed on December 26, 1980, by the decedent's sister, Mrs. Harriet Landry.[1]

II. VALIDITY OF THE WILL
When an action to annul a probated testament is instituted more than three months after the will has been probated (as in the instant case), the burden of proving the invalidity of the testament rests with the plaintiff. La.C.C.P. art. 2932; Stephens v. Adger, 227 La. 387, 79 So.2d 491 (1955); Succession of Simon, 257 So.2d 794 (La.App. 3rd Cir.1972); Succession of Whitehead, 256 So.2d 759 (La.App. 1st Cir.1971), application denied, 260 La. 1139, 258 So.2d 382 (1972). In addition, it is the policy of the law to maintain the validity of a will and vindicate the deceased person's wishes if possible. Succession of Thibodeaux, 238 La. 791, 116 So.2d 525 (1959); Successions of Johnson v. Williams, 387 So.2d 1378 (La.App. 2nd Cir. 1980); Succession of Bel, 377 So.2d 1380 (La.App. 4th Cir.1979).
The plaintiff presented six witnesses on the factual issue of whether or not the testatrix could read and write at the time the will was executed. Mrs. Harriet Landry testified that she was born in 1910, and Mrs. Jacque was born in 1914. Mrs. Landry saw Mrs. Jacque on a regular basis until 1948. Mrs. Jacque went to school for seven years, but did not learn to read or write. Either Mrs. Ollie Brock or Mrs. Rosa Lee Harris would write letters for Mrs. Jacque. Mrs. Jacque could drive a car, had a driver's license and could count money. Mrs. Landry testified that Mrs. Jacque could not read and could sign her name, but could do no other writing.
Mrs. Ollie Ruth Brock testified that she was born in 1927 and was the niece of Mrs. Harriet Landry. Mrs. Brock saw Mrs. Jacque regularly until 1955. Mrs. Brock never observed Mrs. Jacque reading and never observed her write anything other than her signature, which Mrs. Brock taught her to do. On occasion, Mrs. Brock wrote letters for Mrs. Jacque and read letters from relatives to her. Rosa Lee Harris wrote most of Mrs. Jacque's letters for her. Mrs. Brock testified that Mrs. Jacque's will "could be her handwriting."
Mrs. Mary Eva Louden testified that she was born in 1903 and grew up in the neighborhood with Mrs. Landry and Mrs. Jacque. Mrs. Louden never observed Mrs. Jacque either read or write. Mrs. Louden testified that Mrs. Jacque was not mentally retarded and went to school for seven or eight years.
Mrs. Fanny Mae Taylor testified that she was born in 1919 and grew up in the neighborhood with Mrs. Jacque. She testified that she left Rosedale in 1942 and at that time Mrs. Jacque could not read or write. Mrs. Taylor stated that she could not testify about Mrs. Jacque's ability to read and write in 1970.
Mrs. Rosa Lee Harris testified that she was born in 1929 and lived in the neighborhood with Mrs. Jacque from 1955 until the time that Mrs. Jacque was married in 1969. Mrs. Harris wrote letters for Mrs. Jacque and read letters to her from relatives. Mrs. Harris testified that Mrs. Jacque could not read well and that she never saw her write anything except her name. On occasion, *1154 Mrs. Harris made long distance phone calls for Mrs. Jacque. Mrs. Harris identified the handwriting on the olographic will as that of Mrs. Jacque, but observed that Mrs. Jacque could not have understood some of the words. Mrs. Harris testified that Mrs. Jacque had a bad handwriting, that she "could not read or write good ..." and that "a few could read and write better than her."
William E. Jacque, Jr. was called as a witness under cross-examination and testified that he married Gertrude Toles Jacque on September 1, 1969, and lived with her until she died. Mr. and Mrs. Jacque discussed the making of the will and went to an attorney's office and discussed the will with the attorney. The attorney typed up the form of the will and gave the typed form to Mrs. Jacque.[2] Mrs. Jacque brought the typed form home and wrote up the olographic will in her own handwriting in Mr. Jacque's presence. Mrs. Jacque then brought the will back to the attorney for his examination and approval. Mr. Jacque testified that Mrs. Jacque could read and he observed her read papers about things on sale and she read the typed will. Mr. Jacque further testified that Mrs. Jacque told him that she went to night school before they were married to learn to read and write better. Mr. Jacque took Mrs. Jacque to get her driver's license and she passed the test. Mrs. Jacque was a registered voter and did not need assistance to vote at the polls.
The trial judge ruled that the preponderance of the evidence showed that Mrs. Jacque could read and write and thus was capable of validly executing an olographic will. Implicit in this holding is that the trial judge accepted the testimony of William E. Jacque, Jr. as truthful and that the will was entirely written, dated and signed by Mrs. Jacque as required by La. C.C. art. 1588. A review of all of the evidence in this case reveals that these factual findings of the trial judge are not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The plaintiff in this action has failed to sustain her burden of proving that the testatrix was so illiterate that she could not comprehend what she had written.

III. WAS THE GRANTING OF THE DIRECTED VERDICT PROPER?
The law applicable to the appellate review of a judgment granting a directed verdict is set forth in Thomas v. Thom, 408 So.2d 442, 445 (La.App. 1st Cir. 1981), writ denied, 412 So.2d 85 (La.1982), as follows:
"In non-jury cases, the appropriate standard for the trial court's determination of a motion for directed verdict is whether plaintiff has presented sufficient evidence on her case-in-chief to establish her claim by a preponderance of the evidence. Bryan v. Varnado, 394 So.2d 1321 (La. App. 1st Cir.1981); Sevin v. Shape Spa for Health & Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir.1980). In making its determination on such a motion, the trial court is not required to review the evidence in the light most favorable to plaintiff but may instead render judgment based upon a preponderance of the evidence. Bryan v. Varnado, supra. Moreover, the directed verdict in a non-jury case should not be reversed in the absence of manifest error. Littles v. Southeastern Fidelity Insurance Co., 398 So.2d 575 (La.App. 1st Cir.1980)."
The trial judge determined as a matter of fact that not only did the plaintiff fail to sustain her burden of proving that the testatrix could not read and write, but that the preponderance of the evidence demonstrated that she could read and write. As indicated above, this conclusion by the trial judge is not an abuse of the much discretion allowed to him in such matters.

IV. CONCLUSION
For the foregoing reasons, the judgment of the trial court is correct and will be affirmed at the appellant's costs.
AFFIRMED.
NOTES
[1] Apparently, some, if not all, of the decedent's property was her separate property. Compare Articles 912 and 915 of the Civil Code as they existed at the time of the decedent's death.
[2] This is not an unusual procedure when an attorney recommends an olographic will. 10 L. Oppenheim, Louisiana Civil Law Treatise § 109 (1973).