464 So.2d 386 (1985)
Lynn David GALLOWAY, et al.
v.
Dr. Anthony S. IOPPOLO, et al.
No. CA 84 0040.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
*388 Leslie J. Schiff, Opelousas, for plaintiffappellant Lynn David Galloway, et al.
Felix R. Weil, Baton Rouge, for defendant-appellee Baton Rouge General Hosp.
Edward J. Rice, Jr., New Orleans, and Donald T.W. Phelps, Baton Rouge, for defendant-appellee Dr. Anthony S. Ioppolo.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
This is a suit for damages alleging a surgeon's medical malpractice caused the death of a patient. This suit was consolidated with a suit against the hospital where the surgery was performed. These consolidated cases proceeded to trial by judge. During the presentation of the plaintiffs' case, a witness made a side bar comment to the trial judge about the credibility of another witness. After the testimony of the witness was completed, the trial judge advised counsel for the parties of the substance of the comment. Counsel for the hospital requested a mistrial in his client's suit and that the case be transferred to another division of court. Counsel for the plaintiffs opposed the mistrial and asked that the consolidated trial continue. The trial judge declared a mistrial in the suit against the hospital, ordered the two cases severed, assigned the hospital case to another division of court and directed the trial in the suit against the surgeon to proceed. Counsel for the plaintiffs objected to the severance and the continuation of the trial against the surgeon contending it unfairly prejudiced the presentation of his case. The judge noted the objection and ordered the trial to proceed. Counsel for the plaintiffs then rested his case against the surgeon. Counsel for the surgeon made a motion for a directed verdict which was granted. Judgment was thereafter rendered dismissing the plaintiffs' suit against the surgeon at their costs. This devolutive appeal followed.

FACTS
Mrs. Ora Fay Andrus Galloway was admitted to the Baton Rouge General Hospital on August 20, 1979, as a patient of Dr. A.S. Ioppolo. Surgery (an anterior cervical decompression and fusion) was performed on Mrs. Galloway by Dr. Ioppolo on August 21, 1979, between 3:00 p.m. and 5:00 p.m. After surgery Mrs. Galloway was taken to the recovery room where she remained from 5:00 p.m. to 7:15 p.m. At approximately 7:15 p.m., she was discharged from the recovery room and taken to her private room. At approximately 7:55 p.m., Mrs. Galloway suffered a respiratory arrest which caused brain damage and resulted in her death on August 28, 1979. An autopsy conducted on December 6, 1979, revealed bleeding in the surgery site (in the neck) created pressure which made the trachea collapse and caused respiratory arrest.

SEVERENCE AND CONTINUATION OF TRIAL

(Assignment of Error No. 1)
Appellants contend the trial court committed error by severing the two suits and ordering them to continue with the trial of the suit against Dr. Ioppolo.[1] Appellants assert "the testimony could only proceed in an orderly fashion with both defendants in the case", they were "not fully prepared to aim all its guns at Dr. Ioppolo", "Dr. Ioppolo was afforded an advantage that he would not have had with his co-defendant at his side", and the "decision to declare a mistrial necessarily altered the strategy" of the case.
*389 The record shows this suit was filed on February 20, 1980. Dr. Ioppolo answered the suit on April 29, 1980. By letter dated May 26, 1982, counsel for appellants requested a pretrial conference in both suits (they had not yet been consolidated). Rule VII of the civil rules of the Nineteenth Judicial District Court provides, among other things, that the request for a pretrial conference can be made after issue is joined and after disposition of all discovery proceedings. The request also must certify the case is ready for trial. The order of consolidation was entered on October 25, 1982. The pretrial conference was held on April 14, 1983, and the consolidated cases were fixed for trial on August 22, 1983. The trial commenced as scheduled and carried over to August 23, 1983. Nine witnesses were called to testify by the appellants before they rested their case against Dr. Ioppolo. The record does not reflect that the appellants were precluded from calling additional witnesses prior to resting their case. No recess was requested to secure additional witnesses or recall prior witnesses.
La.C.C.P. art. 1631 provides, in pertinent part, as follows:
The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
A trial judge also has inherent power to take reasonable actions to control his docket. Armstrong v. State Farm Fire and Casualty Company, 423 So.2d 79 (La.App. 1st Cir.1982); Sather v. White, 388 So.2d 402 (La.App. 1st Cir.1980).
Consolidation of actions pursuant to La.C.C.P. art. 1561 is a procedural convenience designed to avoid multiplicity of actions and does not cause a case to lose its status as a procedural entity. Broome v. Gauthier, 443 So.2d 1127 (La.App. 4th Cir. 1983), writ denied, 445 So.2d 449 (La. 1984); Howard v. Hercules-Gallion Co., 417 So.2d 508 (La.App. 1st Cir.1982), writ denied, 420 So.2d 984 (La.1982). Procedural rights peculiar to one case are not rendered applicable to a companion case by the mere fact of consolidation; each case must stand on its own merits. Broome, 443 So.2d at 1131; Howard, 417 So.2d at 511; Williams v. Scheinuk, 358 So.2d 340 (La.App. 4th Cir. 1978). Thus, it has been held the filing of a request for notice of judgment (Howard,) a request for trial by jury (Broome,) an intervention (Williams,) an order for briefs,[2] or a judgment[3] in one of several consolidated cases do not procedurally affect the others. By analogy, the granting of a mistrial in the hospital's consolidated suit did not necessitate the granting of a mistrial in the instant suit. It was within the discretion of the trial judge, in the exercise of control over his docket, to sever the suits and require the appellants to proceed with the trial against Dr. Ioppolo alone. That decision will not be disturbed on appeal, absent a showing of an abuse of discretion.
This suit had been in litigation three and one-half years when the trial commenced. Appellants were apparently prepared to and did proceed to trial against Dr. Ioppolo and the hospital for a full day and one-half of another with the presentation of nine witnesses. If the appellants could adequately present their case against Dr. Ioppolo and the hospital together, they should have been able to do so against Dr. Ioppolo individually. After the severance was granted and the trial judge ordered the trial with Dr. Ioppolo to resume, the appellants elected to present no additional evidence, although they had the opportunity to do so. Although the appellants allege prejudice in this assignment of error, the record, briefs and oral argument fail to show any specific example of how they were actually prejudiced or that the trial judge abused his discretion.
*390 This assignment of error is without merit.

DIRECTED VERDICT

(Assignments of Error 2 and 3)
Appellants contend the trial court erred in granting the directed verdict because the doctrine of res ipsa loquitur is applicable to factually establish their right to recovery.
La.C.C.P. art. 1810(B)[4] provides as follows:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence. [Emphasis added].
In nonjury cases, the appropriate standard for the trial court's determination of a motion for directed verdict is whether the plaintiff has presented sufficient evidence on his case-in-chief to establish a claim by a preponderance of the evidence.[5] In making this determination, the trial court is not required to review the evidence in the light most favorable to the plaintiff (establish a prima facie case). A trial court ruling on a motion for directed verdict should not be reversed in the absence of manifest error (or it is clearly wrong). Hanover Insurance Co. v. Forte and Tablada, Inc., 457 So.2d 755 (La.App. 1st Cir. 1984); Haynes v. Williams, 446 So.2d 750 (La.App. 1st Cir.1983); Succession of Jacque, 424 So.2d 1152 (La.App. 1st Cir.1982), writ denied, 429 So.2d 145 (La.1983); Cf. Anderson v. McCarty, 462 So.2d 630 (La. 1985).
The doctrine of res ipsa loquitur is a rule of circumstantial evidence which infers a defendant's negligence when the facts indicate such negligence is the most probable cause of the injury. Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La. 1979); Congelton v. Baton Rouge General Hospital, 444 So.2d 175 (La.App. 1st Cir. 1983). The doctrine of res ipsa loquitur applies when: (1) the accident would not normally occur in the absence of negligence, (2) there exists an absence of direct evidence to explain the activities leading to the injury, and (3) the accident or injury was caused by an agency or instrumentality within the actual or constructive control of the defendant. Congelton, 444 So.2d at 176; Sabella v. Baton Rouge General Hospital, 408 So.2d 382 (La.App. 1st Cir.1981).
Louisiana Revised Statute 9:2794 requires the plaintiff in a medical malpractice action to prove the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians practicing within the involved medical specialty and the defendant either lacked this degree of knowledge or skill or failed to use reasonable care in the application of that skill, thereby causing the plaintiff to suffer injuries which would not otherwise have been incurred. Steinbach v. Barfield, 428 So.2d 915 (La.App. 1st Cir.1983), writ denied, 435 So.2d 431 (La.1983).
Plaintiffs called nine witnesses to the stand: four doctors, four nurses, and the deceased's sister. The four nurses and the deceased's sister only testified about postoperative events. Their testimony was focused upon any possible negligence of the hospital, not Dr. Ioppolo. The four doctors who testified were Dr. Ioppolo, Dr. Lillian Wills (the anesthesiologist), and Drs. Robert E. Hanchey and James A. Poche, neurosurgeons *391 who served on the Medical Review Panel which investigated possible negligence of the hospital.
Dr. Wills testified she was monitoring vital signs during the surgery and did not observe the actual surgical procedure. Mrs. Galloway's vital signs were within normal limits during the surgery. Blood loss was minimal and the surgery was uneventful. Dr. Wills saw Mrs. Galloway in the recovery room between 6:55 p.m. and 7:15 p.m. Mrs. Galloway was awake, talked to Dr. Wills about the people in the recovery room and seemed to be doing very well. Dr. Wills did not recall seeing any swelling in Mrs. Galloway's neck. Mrs. Galloway did not have any respiratory difficulty and her color was good.
Dr. Ioppolo testified small veins and arteries are cut as a normal part of most surgery. The repair for larger vessels is ligation with sutures and for smaller vessels electrocoagulation. Dr. Ioppolo was positive he did not cut any large arteries and no ligation with suture was necessary in Mrs. Galloway's surgery. No drain was inserted in the surgery site because there was no bleeding when the surgery was finished. From the quantity of blood found it could not be determined whether Mrs. Galloway's bleeding came from a small bleeder over an extended period or a large bleeder over a short period. He conceded that a healthy artery does not bleed absent an insult. If the bleeding (which caused Mrs. Galloway's death) occurred for only a short period of time, then it had to come from a large vessel. However, he believed the bleeding was from a small artery bleeding over a longer period of time, but could not be sure what vessel subsequently bled. Post-operative bleeding is a known complication of any surgery. Post-operative bleeding does not indicate substandard care.
Dr. Hanchey testified it was his opinion the bleeding occurred over several hours, but he could not say with certainty whether it was acute bleeding or bleeding over a longer period of time, or whether the bleeding was venous or arterial. Bleeding following any surgical procedure is a known possible complication of surgery. Such bleeding can occur after an anterior cervical fusion "even in the most skillful of hands of the surgeon". There is no presumption of fault or substandard care if bleeding occurs postoperatively at or near a surgery site. Dr. Ioppolo followed the proper standard of care in his treatment of Mrs. Galloway. Mrs. Galloway's condition could have been caused when a small artery cut during surgery became uncoagulated and began bleeding. This could be caused by "movement or a sneeze or that kind of thing. And that has happened to all of us."
Dr. Poche testified in his opinion the bleeding "occurred over a period of hours rather than minutes." There is a certain amount of post-operative bleeding associated with an anterior cervical fusion operation. It was his understanding of the autopsy report "that there was no major source of bleeding identified such as a large vessel being transected". Whatever bled was small and was not bleeding at the time of closure. A healthy artery would not bleed in the absence of some external insult. Bleeding is a known possible complication anytime you make an incision. The fact that bleeding occurs following an anterior cervical fusion raises no presumption the surgeon acted with substandard care. That statement applies to the instant case.
The appellants contend res ipsa loquitur is applicable because healthy arteries do not bleed absent some external insult, such as being cut. However, the medical evidence shows that bleeding is normal with surgery and bleeding after an anterior cervical fusion can occur without substandard care (negligence). The trial judge apparently accepted this testimony as true. Since bleeding can normally occur at a surgery site in the absence of negligence, res ipsa loquitur is not applicable.
Appellants also contend the trial court committed error by granting a directed verdict in favor of Dr. Ioppolo because the evidence presented showed the nurses *392 charged with the post-operative care of Mrs. Galloway were negligent and Dr. Ioppolo was liable for their negligence under the doctrine of respondeat superior (La. C.C. art. 2320), citing Thompson v. Brent, 245 So.2d 751 (La.App. 4th Cir.1971). Four nurses were called to testify by the appellants; two worked in the recovery room and two worked on the floor where Mrs. Galloway suffered the respiratory arrest. All four nurses testified they were employees of the Baton Rouge General Hospital. No evidence was presented to show they were employees of Dr. Ioppolo. Thompson v. Brent, is factually inapposite because the medical assistant who was negligent was hired by the treating physician. Thompson v. Brent, 245 So.2d at 753. Since the nurses were not employed by Dr. Ioppolo, respondeat superior is not applicable.
The trial judge apparently held (as fact) the preponderance of the evidence showed Dr. Ioppolo was not liable for malpractice. A review of the evidence shows this ruling is not clearly wrong.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] The appellants do not contest the order declaring a mistrial in the hospital case or the order assigning the hospital case to another division of court.
[2] Burke v. State Farm Mutual Automobile Insurance Company, 234 So.2d 432 (La.App. 1st Cir. 1970).
[3] Voth v. American Home Assurance Company, 219 So.2d 236 (La.App. 1st Cir.1969); Darouse v. Mamon, 201 So.2d 362 (La.App. 1st Cir.1967).
[4] This article was amended by Acts 1983, No. 534. Paragraph B was moved to Article 1672 which governs involuntary dismissals.
[5] The trial judge in a judge trial is given the authority to "determine the facts" on a motion for directed verdict. To "determine the facts" the judge must resolve credibility issues, make reasonable inferences and evaluate the overall weight of the evidence to determine the preponderance of the evidence.