514 So.2d 1192 (1987)
Perry BERGERON, et ux, Karen Bergeron
v.
HOUMA HOSPITAL CORPORATION OF the SISTERS OF ST. JOSEPH, XYZ Insurance Co., Terrebonne General Hospital and ABC Insurance Company.
No. CA 86 1150.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
Rehearing Denied November 13, 1987.
Writs Denied January 15, 1988.
*1193 Herbert W. Barnes, Houma, for plaintiffs and third-appellantsPerry and Karen Bergeron.
Daniel J. Walker, Houma, for defendants, Terrebonne General Hosp. and Hospital Dist. # One.
Lloyd W. Hayes, New Orleans, for defendant and second-appellantH. Lee Wineland, M.D.
William R. Carruth, Jr., Baton Rouge, for defendant/first-appellant (Sherman Bernard).
Before GROVER L. COVINGTON, SAVOIE and LeBLANC, JJ.
LeBLANC, Judge.
This appeal involves a personal injury tort suit for alleged medical malpractice. The plaintiffs, Perry and Karen Bergeron, filed this action against defendant, Terrebonne General Hospital, on September 23, 1981. Plaintiffs seek damages for a drop foot injury that was caused allegedly by the negligence of the hospital in connection with a hysterectomy performed on Mrs. *1194 Bergeron. On February 6, 1984, plaintiffs added Dr. H. Lee Wineland, the physician who performed the hysterectomy, alleging that Dr. Wineland negligently performed the surgery.[1] The trial court found that the injuries sustained by plaintiff were solely and proximately caused by the negligence of Dr. Wineland and awarded a judgment in favor of plaintiff and against Dr. Wineland in the amount of $179,104.00 in general and special damages, plus costs. The trial court dismissed the suit against Terrebonne General Hospital. Defendant Wineland appeals the trial court's judgment. Plaintiffs appeal the trial court's decision to dismiss the suit against the hospital.[2]
On December 10, 1980, Mrs. Bergeron underwent a vaginal hysterectomy while hospitalized at Terrebonne General Hospital. Dr. Wineland performed the surgery. About twenty-four hours after the surgical procedure, Mrs. Bergeron reported to the duty nurse that she had numbness in her right foot. Two days later, Dr. Wineland called in Dr. Peter H. Rhymes, an orthopedic surgeon, to examine Mrs. Bergeron's foot. He diagnosed the condition as a contusion to the tibial portion of the sciatic nerve, resulting in numbness and loss of muscle function in the lower leg, commonly known as drop foot. He indicated that the cause of the contusion was probably related to the positioning of the legs in the dorsal lithotomy position during the hysterectomy. Dr. Rhymes prescribed a drop foot brace which plaintiff wore in the hospital and for about one year after the surgery. Dr. Rhymes also started Mrs. Bergeron on a physical therapy program with muscle stimulation while she was in the hospital. Mrs. Bergeron was discharged from the hospital within a week of surgery. When Mrs. Bergeron had no function of the muscles of the lower leg as of two weeks after surgery, Dr. Rhymes sent her to Dr. Ken Vogel, a neurologist, for his opinion. Dr. Vogel confirmed Dr. Rhymes' diagnosis of Mrs. Bergeron's condition. Dr. Vogel also acknowledged that a possible cause for the injury was the positioning of the legs during surgery. Mrs. Bergeron was examined by Dr. Vogel and Dr. Rhymes on a regular basis for about two years. Physical therapy treatment was also continued throughout this time. As of June 10, 1982, Dr. Vogel found that Mrs. Bergeron had obtained her maximum recovery and had completed a maximum course of treatment. At that time, he assigned a total body disability of approximately 25 percent of the body as a whole.
Before the surgery, Mrs. Bergeron worked part-time as a dance instructor. Due to the foot drop injury, she has only been able to return to her position of dance instructor in a limited capacity.
The first issue is whether the action against Dr. Wineland is barred by prescription. Since plaintiff discovered the drop foot condition one day after the surgery, defendant contends that the negligence claim against him prescribed on December 11, 1981.
We pretermit discussion of this argument because defendant did not file a formal pleading raising this exception at either the trial or appellate level. Rather, he merely raises the issue in his brief. La. Code Civ.P. art. 927 provides "The court cannot supply the objections of prescription and res judicata, which must be specially pleaded." Although an exception of prescription may be filed for the first time in *1195 an appellate court, it must be presented in a formal pleading. The peremptory exception of prescription cannot be injected as an issue in the case solely by brief or oral argument. La.Code Civ.P. art. 2163. Eschete v. Gulf South Beverages, 442 So.2d 556 (La.App. 1st Cir.1983).
The second issue presented is whether the doctrine of res ipsa loquitur applies to the plaintiffs' claims of negligence against Terrebonne General Hospital and Dr. Wineland. The doctrine of res ipsa applies when (1) the accident would not normally occur in the absence of negligence, (2) there is an absence of direct evidence to explain the activities leading to the injury, and (3) the accident or injury was caused by an agency or instrumentality within the actual or constructive control of the defendant. Galloway v. Ioppolo, 464 So.2d 386 (La.App. 1st Cir.1985).
Regarding the claim of negligence against Terrebonne General Hospital, we conclude that res ipsa loquitur is not applicable. The trial court was not manifestly erroneous in finding that Dr. Wineland positioned plaintiff for the surgery. No hospital personnel were involved in the positioning. Therefore, the hospital did not have actual or constructive control of the plaintiff at the time of her being positioned.
Furthermore, we find that plaintiff has not otherwise met her burden of proof. Plaintiff has not established that the hospital breached a duty owed to her by the hospital. "A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control." Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 at 747 (La.1974). "However, the hospital's duty has been traditionally limited: a hospital is not an insurer of a patient's safety, and the rules of care are limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen." Mullins v. Our Lady of the Lake Hospital, Inc., 402 So.2d 170 at 172 (La.App. 1st Cir.1981), quoting Goodeaux v. Martin Hospital Inc., 333 So.2d 717 (La.App. 2d Cir.), writ denied, 338 So.2d 295 (La.1976). Plaintiff contends that even if the hospital personnel did not place her in the dorsal lithotomy position for the surgery, the hospital breached a duty to protect her by failing to properly adjust or maintain the position. We find that when Dr. Wineland performed the procedure of positioning the patient, he thereby took positioning out of the control of the hospital. It would have been unreasonable for the hospital personnel to interfere with the doctor's action of positioning the patient. Furthermore, the record does not indicate that there was anything unusual about the positioning of the plaintiff that should have alerted the hospital personnel that adjustments to the position were needed.
Regarding the claim of negligence against Dr. Wineland, La.R.S. 9:2794(A) provides that plaintiff must prove the degree of care ordinarily practiced by physicians in the gynecological speciality, that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill and that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, plaintiff suffered injuries that would not otherwise have been incurred. However, according to La.R.S. 9:2794(C), if the doctrine of res ipsa loquitur applies to plaintiff's claim of negligence, the provisions of La.R.S. 9:2794(A) will not apply to the present case.
"Under the principle of res ipsa loquitur, the defendant's negligence is inferred because, under the facts shown, the inference that defendant's negligence caused plaintiff's harm is probable and more plausible than any other explanation propounded. See Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972)." Morgan v. Willis-Knighton Medical Center, 456 So. 2d 650 at 655 (La.App. 2d Cir.1984). However, "[i]t is generally conceded that res *1196 ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff." White v. McCool, 395 So.2d 774 at 777 (La.1981), quoting Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389 at 391 (1957).
We conclude that res ipsa loquitur does apply to plaintiff's claim against Dr. Wineland. First, we find that the drop foot injury would not normally occur as a result of a hysterectomy in the absence of negligence. The evidence establishes that improper positioning by Dr. Wineland for surgery is the only plausible explanation for plaintiff's injury. Dr. Wineland testified that other possible causes of the injury are an anatomical or congenital abnormality or neuritis. The medical testimony indicates that these conditions are only remotely possible. There is no evidence that plaintiff had a medical history involving either of these conditions and there is no convincing testimony to establish that these factors were involved here. Dr. Cazayoux, an expert in the fields of obstetrics and gynecology, testified that improper positioning was more probably the cause of this type of injury than an anatomical variation. Dr. Rhymes, the orthopedic surgeron who treated plaintiff's injury, also testified that the injury was probably related to the positioning of the patient in the operating room. None of the experts, other than Dr. Wineland, addressed neuritis as a possible cause of the drop foot condition. The second element of res ipsa loquitur is met because there is no direct evidence to explain how the drop foot injury occurred. Thirdly, we find that the positioning of plaintiff during surgery was controlled by Dr. Wineland.
Furthermore, we find that Dr. Wineland has failed to rebut the inference of negligence which arises in this case due to the application of res ipsa loquitur. Dr. Wineland testified that he does not recall positioning plaintiff for the surgery, so he does not recall either the specific actions that he took in positioning plaintiff or whether he observed specific safeguards that might be used in placing a patient in the lithotomy position. He testified that even if he does not position a patient for surgery, he always checks the position before operating. However, Dr. Wineland admitted that the purpose of checking the position is to determine that he has adequate light and exposure to be able to perform the surgery, not to determine whether there is unnecessary pressure on any part of the patient's body. Although Dr. Cazayoux testified that the positioning of plaintiff for surgery was optimal, his testimony also indicates that he did not observe plaintiff being placed into the lithotomy position or plaintiff being taken down from this position. He only observed plaintiff's position during the surgery. The record establishes that injury to the patient might occur not only from improper positioning during the surgery but also from the manner in which a patient is put into or taken down from that position. Dr. Wineland has failed to establish that he exercised the degree of care ordinarily practiced by other gynecologists in positioning plaintiff for the surgery.
After examining all of the evidence presented, we find that plaintiff has proven the negligence of Dr. Wineland by a preponderance of the evidence.
Since we have found that Dr. Wineland was negligent, we do not need to address plaintiff's argument that Dr. Wineland failed to obtain an informed consent to the surgery from plaintiff.
The last issue is whether the general damages awarded by the trial court are excessive. The trial court awarded plaintiff *1197 the following amounts in general damages:

Past and future physical pain and
suffering................................. $ 50,000.00
Past and future mental pain and suffering
.......................................... 75,000.00
Disability................................ 50,000.00

We must determine whether the trial court's award is a clear abuse of the "much discretion" afforded by La.Civ.Code art. 1999. A finding of abuse must be based on the facts in the record. See Reck v. Stevens, 373 So.2d 498 (La.1979). If we determine that the award should be lowered, we can only lower the award to the highest point which would have been within the trial court's discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976).
We find that the trial court's award of $50,000.00 for past and future physical pain and suffering is excessive. The record indicates that plaintiff's drop foot condition did not result in severe pain and suffering. Plaintiff's condition involves numbness and weakness of the lower leg and foot muscles. She testified that she does experience some pain in her foot when she walks for long distances or drives a car for long distances. However, the record does not establish that this pain is intense or that it significantly hinders plaintiff's daily routine. Treatment for the drop foot involved physical therapy with muscle stimulation and a drop foot brace. Although this treatment may have been inconvenient to plaintiff, there is no evidence that it was painful. The record also establishes that no future treatment has been recommended by the attending physicians. Accordingly, we reduce the award for past and future physical pain and suffering to $25,000.00.
We also find that the trial court's award for past and future mental pain and suffering is excessive. The record indicates that plaintiff experienced nervousness, depression and crying spells which may have been attributable to the disability resulting from the drop foot condition. However, plaintiff did not seek psychiatric help until one and a half years after the surgery. She was examined by a psychiatrist, Dr. Alvin Rouchell, on six occasions. During that time, Dr. Rouchell prescribed medication for depression. In less than six months, Dr. Rouchell found that plaintiff was doing well and no longer needed the medication. He stated that he advised plaintiff to return if she had problems in the future but there was no recommended treatment. There is no evidence in the record that plaintiff returned for psychiatric treatment after this time. Based on these facts, we find that the award for past and future mental pain and suffering should be reduced to $50,000.00.
The trial court's award of $50,000.00 for disability is also excessive. The trial court based its award on Dr. Vogel's assignment of disability which was a 25 percent disability of the whole body. This percentage of disability was calculated based on plaintiff's physical condition as of June 10, 1982. Although Dr. Vogel testified, in a deposition taken October 19, 1982, that plaintiff had obtained her maximum recovery as of June 10, 1982, we find that plaintiff's testimony during trial, dated October 2, 1985, establishes that her drop foot condition improved during the three year period. Mrs. Bergeron testified that she has no problem with walking. Her testimony indicates that she experiences weakness in her foot only when she walks for long distances. Other facts support the conclusion that the drop foot injury does not significantly hinder plaintiff's physical actions. Although plaintiff could only teach classes at a lower level than the classes she had taught before the surgery, she did return to her position as dance instructor for a period of time after the surgery. Also, at the time of trial, plaintiff was teaching synchronized swimming. After examining all of the facts available at the time of trial, we find that the award for disability should be reduced to $25,000.00.
For the above reasons, the judgment of the trial court is amended as follows:

Medical expenses........................... $ 4,104.00
Past and future physical pain and
suffering.................................. 25,000.00

*1198
Past and future mental pain and suffering
........................................... $ 50,000.00
Disability................................. 25,000.00

The judgment is affirmed in all other respects.
Eighty (80%) percent of the costs of this appeal are to be paid by Dr. Wineland. Twenty (20%) percent of the costs of this appeal are to be paid by plaintiffs.
AMENDED IN PART AND AS AMENDED AFFIRMED.
NOTES
[1] Suit was also filed against ABC Insurance Co., Terrebonne General Hospital's insurer and LMN Insurance Co., Dr. Wineland's insurer. Houma Hospital Corp. of the Sisters of St. Joseph and its insurer, XYZ Insurance Co. were also named as defendants. The Houma Hospital Corp. filed an answer and third party demand in which they third partied the Hospital Service District No. 1 of the Parish of Terrebonne. Plaintiffs agreed to dismiss the Houma Hospital Corp. with the stipulation that any responsibility which might attach to the hospital will be assumed by the Hospital Service District No. 1 of the Parish of Terrebonne. Later, suit was filed against DEF Insurance Co., the insurer of Hospital Service District No. 1.
[2] The malpractice claims against all defendants were reviewed by a medical review panel as required by La.R.S. 40:1299.47. The decision of the review panel stated that the evidence did not support the conclusion that the defendants failed to meet the applicable standard of care.