546 So.2d 592 (1989)
Bryant A. LEVY
v.
OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER.
No. 88 CA 0914.
Court of Appeal of Louisiana, First Circuit.
June 20, 1989.
Robert W. Stratton, Baton Rouge, for plaintiff-appellant Bryant A. Levy.
Roger M. Fritchie, and T. iiacdougall Womack, Baton Rouge, for defendant-appellee Our Lady of the Lake Hosp., Inc.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
This is a medical malpractice action. Plaintiff, Bryant Levy, filed suit against defendant, Our Lady of the Lake Hospital, Inc. (OLOL), seeking damages for injuries allegedly sustained due to a hypodermic injection. Following a bench trial, the trial court rendered judgment dismissing Levy's suit. From this judgment, Levy appeals.
On February 12, 1984, Lola Levy, Levy's mother, brought her sixteen year old son to the emergency room at OLOL because he was experiencing fever, dizziness, nausea and diarrhea. An emergency room physician examined Levy and prescribed an injection of Phenergan and Bentyl.
Nurse Roy Holten administered the injection in Levy's right gluteal muscle. The medical records show that after the injection Levy was feeling better and was discharged from OLOL. At some point after the injection, Levy began experiencing pain and swelling in his right hip. He was *593 ultimately diagnosed by Dr. Bryan Griffith as having heterotopic ossification or myositis ossificans. According to Stedman's Medical Dictionary, 922 (W. Dornette 5th ed. 1982), myositis ossificans is "ossification or deposit of bone in muscle with fibrosis, causing pain and swelling in muscles" and heteretopic ossification is an aberrant formation of bone.
Following trial on the merits, the trial judge issued written reasons for judgment, stating that res ipsa loquitur was not applicable to this case because Levy's condition could occur where an injection was properly administered as well as where it were negligently administered. The trial judge then found that Levy did not prove that the injection was administered negligently. The trial judge found that although Levy's condition was probably related to the injection, the condition could occur even where the injection was properly given, in the absence of any negligence.
On appeal, Levy urges three assignments of error:
1. The trial court erred in failing to hold the injection was negligently administered.
2. The trial court erred in allowing Julia Williams to testify as an expert witness in the field of nursing and hospital administration where she was not listed as an expert in the pretrial order and where Levy timely objected to her testimony on that basis.
3. The trial court erred in failing to apply the doctrine of res ipsa loquitur.

ASSIGNMENTS OF ERROR NOS. 1 AND 3
We will first address Levy's contention that the trial court should have applied res ipsa loquitur. The doctrine of res ipsa loquitur applies when:
(1) the accident would not normally occur in the absence of negligence, (2) there is an absence of direct evidence to explain the activities leading to the injury, and (3) the accident or injury was caused by an agency or instrumentality within the actual or constructive control of the defendant. Galloway v. Ioppolo, 464 So.2d 386 (La.App. 1st Cir.1985).
Bergeron v. Houma Hospital Corp., 514 So.2d 1192, 1195 (La.App. 1st Cir.1987), writs denied, 517 So.2d 812 (La.1988). As was further explained by the supreme court, "[r]es ipsa loquitur applies when `circumstances suggest the defendant's negligence as the most plausible explanation for the injury.'" Smith v. State through Department of Health and Human Resources Administration, 523 So.2d 815, 822 (La.1988).
Dr. Griffith, Levy's treating physician, testified for plaintiff as an expert in orthopedic surgery. He explained that heterotopic ossification or myositis ossificans occurs due to bleeding within a muscle; the bleeding causes a hematoma to form, from which scar tissue forms; the scar tissue then turns into bone.
Dr. Griffith opined that the injection probably caused Levy's condition; he based his opinion on the location of the injection and the time between the injection and Levy's complaints of pain and swelling in his right hip. However, Dr. Griffith also testified that he was concerned by the lapse of time (several days) between the injection and Levy's first symptoms, and that he would be more comfortable relating the injection to Levy's condition if the symptoms arose a few hours after the injection.
On cross-examination, Dr. Griffith admitted that a properly administered shot could cause bleeding which might become a hematoma and then bone; he also testified that bleeding due to a properly given intramuscular injection is not uncommon. According to Dr. Griffith, another cause of heterotopic ossification and/or myositis ossificans is trauma, such as a blow, which causes bleeding within a muscle.
The opinion of the Medical Review Panel was introduced into evidence at trial. See LSA-R.S. 40:1299.47 H. According to the panel's opinion,
[T]he evidence does not support the conclusion that the defendant failed to meet the applicable standard of care....
*594 The conduct complained of (was) (was not) a factor of the resultant damages.*
* By this, the panel members mean to say that, while they feel that the injection was more than likely the cause of this young man's subsequent problems, there was nothing in the evidence to indicate that the injection was given or administered improperly. The evidence was insufficient to establish the presence, nature, extent and/or duration of any disability or impairment.
Dr. Cranor felt that the injection `may' have had a causal relationship with this young man's problems.
All of the physicians on the Medical Review Panel were witnesses for OLOL. Dr. Michael Fitzsimmons, an expert witness in anatomic pathology, and Dr. Craig Vitrano, a physician specializing in emergency treatment, both testified that with a properly administered injection, bleeding is not uncommon. They further testified that bleeding and subsequent bone formation as happened to Levy could occur without negligence in the administration of an injection. Both doctors said that myositis ossificans usually results from a trauma.
The remaining physician panelist, Dr. Kenneth Cranor, an orthopedic surgeon, testified that he could not say that Levy's condition was more than likely due to the injection. He testified that the basis for his opinion was the following: the location of the injection was not the location of the myositis ossificans; an infection may have caused Levy's condition; and Levy's condition may have been due to direct trauma experienced while playing basketball a few days after the injection.
After thoroughly reviewing this testimony, we can not say the trial court erred in failing to apply res ipsa loquitur. Levy has not proven that his injury "would not normally occur in the absence of negligence." Bergeron, 514 So.2d at 1195.[1] For these reasons, Assignment of Error No. 3 has no merit.
We will now review Levy's contention that Nurse Holten was negligent. In Smith, the supreme court discussed the plaintiff's burden of proof in a medical malpractice action against a hospital.
[T]he plaintiff must prove, as in any negligence action, that the defendant owed the plaintiff a duty to protect against the risk involved, that the defendant breached that duty, that the plaintiff suffered an injury, and t'at the defendant's actions were a substantial cause in fact of the injury. `A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require,' and to protect the patient from `external circumstances peculiarly within the hospital's control.' A determination of whether a hospital has breached those duties depends upon the facts and circumstances of each particular case.
Smith, 523 So.2d at 819. (Citations omitted).
Levy contends that Nurse Holten negligently administered the injection for five reasons: (1) he did not use the Z-track technique; (2) he used a dart-like motion in giving the injection; (3) he placed the injection improperly; (4) he did not chart Levy's response to the injection; and (5) his documentation (charting) was incomplete.
*595 The only witness to the injection was Levy's mother, as Levy was lying down and did not see the shot. Mrs. Levy testified that Nurse Holten "wiped the area with alcohol and just gave him a shot and stuck him like a dart." Mrs. Levy said that her son began complaining of pain and the area around the injection began swelling immediately afterwards. After a while, Nurse Holten returned, asked Levy how he was feeling, to which Levy replied "a little better," and then told them they could leave. Nurse Holten never examined the injection site.
Nurse Holten testified that he had no independent recollection of Levy, nor did the medical records refresh his memory. However, Nurse Holten emphatically testified that he always gives his shots in the Z-track method as called for by the OLOL Emergency Care Unit Procedure Manual. Nurse Holten explained that the purpose of the Z-track method is to lessen or prevent irritation to the skin.
Nurse Holten demonstrated the procedure he uses in giving a shot on the bailiff, and indicated that he gave the shot in the upper outer quadrant, as required by the Manual. On cross-examination, Levy's attorney asked Nurse Holten about Mrs. Levy's testimony:
Q. She testified that you didn't touch the young man; that you were in a short distancethrew the needle in effect, and it was a short toss to the area of injection. You didn't find any spot or do any of that. Do you deny that?
A. I am not going to even justify that with an answer. That is it.
Nurse Holten admitted that he did not chart his use of the Z-track method or his observation of the injection area afterward. The Procedure Manual does require documentation of use of the Z-track method with the administration of Phenergan; however, in the Manual under documentation, the items listed are time, dosage, route of administration with site given, and patient's response to medication. The medical record shows that the latter items were documented, and Nurse Holten clearly explained that although he did not document his use of the Z-track method, he always uses the Z-track method.
Julia Williams testified as an expert in nursing for OLOL. According to Williams, based on Nurse Holten's demonstration of the procedure he always uses to give injections, Nurse Holten placed the injection properly. Williams also said that a dartlike motion in giving a shot is appropriate. Williams testified that assessment of an injection site by a nurse after medication was given is not routine, and is only done when circumstances indicate (particular medication, size of patient, complaints from patient). Williams testified that in her opinion, Nurse Holten's charting did not violate the appropriate standard of care required.
After thoroughly reviewing the record, we can not say that the trial court erred in finding that OLOL, through its employee, Nurse Holten, adhered to the applicable standard of care and that OLOL did not breach any duty owed to Levy. Assignment of Error No. 1 has no merit.

ASSIGNMENT OF ERROR NO. 2
Levy contends that the trial court erred in allowing Williams, who was listed as a fact witness on the pretrial order, to testify as an expert witness at trial. The trial judge allowed Williams to testify as an expert because she was listed as a witness in the pretrial order. The trial judge also based his decision on answers to interrogatories propounded by Levy to OLOL wherein Williams was identified as Risk Manager at OLOL and a registered nurse who "has firsthand knowledge of the excerpts numbered 8 through 10 [exhibits for trial which included the Procedure Manual] and will be able to identify them as authoritative and identify them as to their contents."[2] The trial judge reasoned that Levy was put on notice as to the witness and possible content of her testimony.
*596 We initially note that the pretrial order is not a part of the record, and thus we can not consider it. See Franklin v. City of Baton Rouge, 525 So.2d 674 (La. App. 1st Cir.1988). However, even if it were in the record, we can not say that the trial judge abused his discretion in allowing Williams to testify as an expert. The trial judge has much discretion in determining whether to modify the pretrial order. Harper v. State Farm Mutual Automobile Insurance Co., 484 So.2d 737, 740 (La.App. 1st Cir.), writ denied, 489 So.2d 246 (La. 1986). In this case, we can not say that the trial judge abused his discretion in reasoning that Levy was not surprised by Williams testifying as an expert witness. We find this case distinguishable from the case of Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5th Cir.), writ denied, 434 So.2d 1097 (La.1983), cited by Levy; in Cuccia, the possibility of plaintiff's expert witness testifying at trial was totally unknown to defendant since the witness was not listed on the pretrial order as a fact or expert witness. Levy's assignment of error is meritless.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal to be paid by Levy.
AFFIRMED.
NOTES
[1] We find the case sub judice distinguishable from the recent supreme court decision, Montgomery v. Opelousas General Hospital, 540 So.2d 312 (La.1989). In Montgomery, the supreme court found that the trial court properly applied the doctrine of res ipsa loquitur where the plaintiff sustained damage to a nerve in her right arm due to a venipuncture. After reviewing the evidence, the supreme court found that negligence was the probable cause of the plaintiff's problems in the absence of other equally probable explanations, and thus, res ipsa loquitur was applicable. The supreme court based its finding in part on the conflicting testimony: one medical expert witness testified that in his opinion a properly performed venipuncture does not cause nerve damage while the other medical expert witness opined that the plaintiffs injury could occur from both properly and improperly performed venipunctures, although he admitted that plaintiffs condition occurs very rarely.

In the case sub judice, the medical experts all agreed that a properly given shot as well as an improperly given shot could cause the plaintiffs condition. Thus, negligence is not the most plausible explanation for the plaintiffs condition, unlike the Montgomery case.
[2] The interrogatory propounded by Levy to OLOL and OLOL's response are as follows:

INTERROGATORY NUMBER 3
Please provide the names, addresses and telephone numbers of each expert witness that you will call in connection with exhibits numbered 5 through 10 listed in the pretrial order.
ANSWER TO INTERROGATORY NO.3
The experts previously listed by th edefendant in its Pretrial Order will be able to identify the excerpts noted in numbers 5 though 7 as authoritative. Julia Williams, Risk Manger at Our Lady of the Lake Hospital and registered nurse has firsthand knowledge of the excerpts numbered 8 through 10 and will be able to identify them as authoritative and identify them as to their contents.