617 So.2d 1313 (1993)
David K. COMEAUX, Plaintiff-Appellant,
v.
CITY OF VILLE PLATTE, Defendant-Appellee.
No. 92-749.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1314 Clyde Fontenot, Ville Platte, for plaintiff-appellant David Comeaux.
Laura Katherine Austin, New Orleans, for defendant-appellee City of Ville Platte.
Before DOMENGEAUX, C.J., and GUIDRY and WOODARD, JJ.
GUIDRY, Judge.
Plaintiff in this worker's compensation suit, David K. Comeaux, appeals a decision by the hearing officer which found him entitled to supplemental earning benefits, rather than temporary total disability benefits, after the date of filing of form 1002 with the Office of Worker's Compensation. We affirm.
David Comeaux, a 26-year old employee of the City of Ville Platte, originally injured his low back on September 4, 1986, while attempting to lift a sewerage cleaner. He was referred to Dr. Charles Fontenot, who treated him conservatively for what the doctor diagnosed as an acute lumbar strain. Dr. Fontenot released Comeaux to light duty after approximately one week and to full duty after approximately one month.
Thereafter, on October 20, 1986, Comeaux was digging at the bottom of a shallow trench when he sustained a second injury. He was once again referred to Dr. Fontenot who diagnosed claimant as having an acute cervical strain and aggravation of his previous lumbar strain. Comeaux has not worked since the second accident.
The City of Ville Platte voluntarily paid all of Comeaux's medical expenses and from the date of injury through December 1988, paid claimant temporary total disability benefits. At that time, Comeaux began receiving partial disability retirement payments from the City and the appropriate *1315 setoff for that benefit was taken in February 1989 retroactively to December 1988. This setoff is not at issue.
At this same time, based upon various medical reports, the City also changed Comeaux's disability status from one of temporary total disability to supplemental earnings benefits and took the appropriate setoff from the latter benefits. Neither Comeaux, directly, nor the Office of Worker's Compensation (OWC), by the filing of a form 1002, were notified of this change. It is disputed whether or not Comeaux's attorney was notified of the change. In any event, when a new claims agent took over Comeaux's case, a form 1002 was filed with the OWC and a cover letter sent to claimant's attorney on November 2, 1990.
That cover letter prompted the filing of the instant litigation in which claimant sought reinstatement of temporary total disability benefits, back due temporary total benefits from the date of change through the date of reinstatement, plus penalties, interest and attorney's fees. A hearing was held on October 17, 1991 and, thereafter, on January 6, 1992, the hearing officer issued reasons for ruling, which state in pertinent part:
1) Defendant improperly reduced claimant's benefits in December of 1988. Defendant did not submit a Form 102 [sic] or otherwise give proper notice of the reduction to claimant or the Office of Workers' Compensation as required by law. See La.R.S. 23:1201.g and LAC Title 40:I.507. Defendant alleged that the reduction was proper because claimant was entitled only to Supplemental Earnings Benefits (SEB). But the checks with the reduced amount from December 1988 stated on the checks themselves that they were for Temporary Total Disability (TTD) and not for SEB. The Office therefore finds that defendant has been paying the wrong amount of weekly TTD benefits from December of 1988. Defendant must now pay the appropriate back compensation including legal interest as well as the twelve percent (12%) penalty. The defense that the medical evidence supports the December, 1988, reduction is without merit because favorable medical evidence does [sic] negate the obligation of a compensation carrier to notify claimant and the Office of Workers' Compensation of a reduction, nor does it necessarily mean that a reduction would be proper.
2) The back payment of compensation is owed only up through the present. The medical evidence shows that claimant is capable of light duty work and this Office believes that the best thing for claimant would be for him to get some sort of job. Therefore, from the effective date of this Judgment claimant is entitled to SEB.
3) The improper reduction of weekly benefits in December, 1988, was an arbitrary and capricious act. The mistakes made were totally within the control of defendant and even after notice defendant failed to correct them. Claimant is granted an award of $2,750.00 in legal fees.
Between the date of the issuance of the foregoing reasons and the signing of a formal judgment on March 26, 1992, the hearing officer changed his mind concerning 2) above and decided that past due temporary total disability benefits were only due from the date of change to SEB, December 1, 1988, until the filing of the form 1002 with the OWC on November 2, 1990 for a total of $4,583.50 plus interest and penalty (12%).
Plaintiff appeals urging the hearing officer erred in the following respects:
(1) Finding Comeaux could return to light duty work.
(2) Cutting off temporary total disability benefits with the filing of form 1002 by the City.
(3) Allowing a defense witness not listed on the pretrial order to testify in lieu of a witness so listed.
(4) Changing his mind as to item (2) of his reasons for ruling and issuing a judgment *1316 reflecting that change without an additional hearing.
The City has neither appealed nor answered this appeal.

FACTS
Comeaux was examined by a number of doctors and subjected to a battery of tests. Not one test revealed any significant abnormality and the only objective evidence of any injury was transient muscle spasms.
Dr. Charles Fontenot treated claimant from after his first accident through the date of the hearing. During that five year period, the only medical conditions which he could conclusively document were respiratory difficulty and a gastric ulcer, both of which predated Comeaux's job-related injuries. After the October 20, 1986 injury, Dr. Fontenot diagnosed claimant as having muscle and ligament injuries in his cervical and lumbar areas. When those injuries failed to respond to conservative treatment, he referred Comeaux to Dr. Frazer Gaar, an orthopedist.
Dr. Gaar, finding no arthritic changes or other orthopedic problems, agreed with Dr. Fontenot's diagnosis. He followed Comeaux until March 1987, when he issued a report stating: "All of his complaints now seem to be non-organic or functional. I think at this stage I cannot find any reason for his continued complaints based on objectivety. All of his tests have been negative".
In April 1987, Dr. Fontenot referred Comeaux to another orthopedic surgeon, Dr. Arthur Flick, and to Dr. Jimmie D. Cole for a psychological evaluation. In an April 27, 1987 report to the City's worker's compensation administrator, Dr. Fontenot stated:
In summary, this 26 year old male has been under treatment since September 1986 through April 27, 1987. He's been seen by two orthopedic specialists, Dr. Garr [sic] and also Dr. Flick. The results of multiple tests including CAT scan and discogram were all within normal limits as far as a ruptured disc is concerned. I feel that he does have some psychogenic overlay and tends to be very nervous and very concerned as to his health and his future prognosis. He continues to require regular medication. He has stopped the physical therapy because he had taken it for approximately four months with very little relief of his symptoms. I would think that at the present time if David Comeaux could be placed on light duty status I see no reason why he could not return to work on a light duty basis. I would recommend that his employee [sic] be contacted to make these arrangements. In the meantime he continues to take medication for control of his pain symptoms. However, his physical findings and his multiple examinations have failed to document the exact cause of his multiple physical complaints. (Emphasis ours)
Dr. Flick first saw Comeaux on April 14, 1987. He diagnosed plaintiff's low back pain as of mechanical etiology and suspected myofascitis of the paraspinal muscles in the lumbar area. A discogram with facet injections failed to substantiate Dr. Flick's suspicion and when a MRI scan showed no indication of central spinal stenosis or significant nerve canal encroachment, Dr. Flick recommended a work hardening program. Dr. Flick also noted Comeaux's psychiatric problems and opined that any rehabilitation program that did not include "intensive... psychiatric care" would probably be doomed to failure. Dr. Flick continued to treat Comeaux through August 16, 1988, when he reported: "The patient has reached the point of maximum medical improvement. I am discharging the patient from my care. I do not feel that he can return [to] his previous type of employment". Dr. Flick assigned claimant a 25% disability and indicated that he felt claimant could engage in light duty employment. Dr. Flick also approved two positions suggested by Crawford and Company, the City's worker's compensation administrator at the time, (1) sack sewer at Cajun Bag and Supply Company, and (2) security guard.
*1317 During the time Comeaux was being seen by Dr. Flick, that physician referred him to Dr. Steven Snatic, a neurologist, in an attempt to rule out any neurological problems. Dr. Snatic examined claimant and reviewed his MRI scan on June 28, 1988. In a letter to Dr. Flick, Dr. Snatic stated:
... I find no solid evidence of overt dysfunction of the nervous system.
I would point out that there is a degree of inconsistency in his relative comfort sitting with his legs stretched out in front of him in a relative erect posture, and the apparent inability to tolerate straight leg raising or knee-chest maneuver while supine when he is able to tolerate virtually identical postures while he is unable to bend comfortably from the waist while standing.
Dr. Cole, the psychologist to whom Comeaux was referred, treated plaintiff on a regular basis from January 1987 through July of that year. Dr. Cole administered several psychological and intelligence tests. He also had claimant participate in group and individual therapy sessions. Comeaux tested very low academically, in the mildly retarded range of mental ability, with skills at about the third grade level. Therapy sessions were aimed at pain management and dealing with the patient's depression and vocalization of suicidal intent. In a July 20, 1987 letter to the City's worker's compensation administrator, Dr. Cole stated:
It is my opinion that Mr. Comeaux has now reached his maximum benefit through the pain management and psychological intervention that I can offer him. In my opinion, the patient has reached maximum benefit through psychological intervention and unless there is some physical component to his problem which renders him unable to return to work, I feel the patient is capable of doing so. Over the past three weeks the patient has shown continued improvement, however he is very dependent and would seek to use other means of treatment as perhaps as a way of avoiding returning to work.
Accordingly, as of August 1987, all of the specialists who evaluated and/or treated Comeaux felt that he could return to some form of "light" employment and two specific jobs had been approved as compatible with plaintiff's physical and mental status. It was only Dr. Fontenot who continued to question claimant's ability to work, and even he eventually changed his opinion. In his May 22, 1989 report, Dr. Fontenot stated:
In summary, I feel that David has reached a maximum improvement and I do not anticipate him to have any further improvement. His complaints are almost 100% subjective with almost no objective findigns [sic]. However, I feel that his complaints are real to him and I do not feel that he is exaggerating his complaints.

OPINION
La.R.S. 23:1201(G) provides that upon modification of compensation benefits, for any cause, the employer or insurer shall immediately send a notice to the OWC reflecting the change. In this case, notification was not filed in December 1988 when the benefits were changed from temporary total disability to SEB. The required notice (form 1002) was not sent until November 2, 1990. Following the hearing of October 17, 1991, the hearing officer issued written reasons, dated January 6, 1992, in which he indicated that back temporary total disability benefits would be due from December 1988 "... up through the present". The hearing officer also found that "[t]he medical evidence shows that claimant is capable of light duty work and ... from the effective date of this Judgment claimant is entitled to SEB".
A formal judgment in the case was rendered and signed on March 26, 1992 awarding temporary total disability benefits from December 1988 to November 2, 1990 and thereafter SEB. Handwritten in the margin of the judgment is the following: "In the Ruling the Court made an inadvertent error ... stating or implying that TTD was *1318 owed up through the present. The Court meant to state that TTD was properly owed from the date of reduction to SEB in December of 1988 until November of 1990 or when the 1002 form was filed w/the Office of Workers' Compensation. For the misunderstanding and delay, the Court apologizes".
Appellant argues manifest error in the trier of fact's finding that plaintiff was capable of light duty work; that even if plaintiff was capable of returning to some type of employment, the City was not entitled to change his benefits from temporary total disability to SEB until a judicial determination of claimant's change of status; and, that once the hearing officer issued his "reasons", he was bound to render a judgment in conformity therewith or hold another hearing.
The hearing officer's finding that Comeaux was no longer temporarily totally disabled is a question of fact reviewable under the manifest error standard of review. La.R.S. 23:1221(1) defines temporary total disability as the inability "... of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience ...". We find no clear error in the hearing officer's determination that as of August 1988 plaintiff was able to engage in some gainful occupation for wages. This determination is amply supported by the medical evidence which places Comeaux at maximum medical improvement and able to engage in some form of "light duty" work.
Inasmuch as we find plaintiff was no longer temporarily totally disabled as of August 1988, it follows that the hearing officer's judgment awarding SEB from and after November 2, 1990 is not clearly wrong.
Appellant offers no authority for his argument that once the hearing officer issued his reasons, he was bound to issue a judgment in conformity therewith and we know of none. Reasons for judgment by a trial judge are not controlling and do not constitute the judgment of the court. We see no reason why this same principle should not be made applicable to a hearing officer's reasons in compensation matters.
In Hebert v. Hebert, 351 So.2d 1199, 1200 (La.1977), the court stated:
Furthermore, we think that the legislature intended to prohibit alterations in the substance of the written judgment after it has been signed by the judge and not alterations in the judge's oral statements from the bench. Otherwise, inadvertent but substantive misstatements once uttered by the trial judge could not be changed except for their phraseology or for corrections of errors in calculation. This result would be unreasonable. It is much more likely that the lawmakers considered the written judgment to be the final judgment which is unalterable in substance. A judgment of this nature is usually prepared with care, and the trial judge may require that both parties or their counsel approve its form before signing. A written judgment may be revised before it is signed thus eliminating many possibilities of error or misunderstanding.
And more recently in Gulfco Investment Group, Inc. v. Jones, 577 So.2d 775 (La. App. 2d Cir.1991), the Second Circuit, relying on Hebert, supra, explained:
Art. 1951 does not mandate the amendment of a final judgment to conform with the trial court's oral or written reasons for judgment where the amendment would make substantive changes to the original judgment. Villaume v. Villaume [363 So.2d 448 (La.1978) ], supra; Hebert v. Hebert, 351 So.2d 1199 (La. 1977). Indeed, the trial court's written judgment is controlling even though the trial judge may have intended otherwise. Hebert v. Hebert, supra; Shatoska v. Whiddon, 468 So.2d 1314 (La.App. 1st Cir.1985), writ denied, 472 So.2d 35 (La. 1985); Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1st Cir.1983). This rationale, that the trial court's signed *1319 judgment prevails over the reasons for judgment, pertains because,
[o]therwise, inadvertent but substantive misstatements once uttered by the trial judge could not be changed except for their phraseology or for corrections of errors in calculation. This result would be unreasonable. It is much more likely that the lawmakers consider the written judgment to be the final judgment which is unalterable in substance.

Hebert v. Hebert, supra 351 So.2d at 1200.
Gulfco, supra, 577 So.2d at 777.
Accordingly, we find no merit to appellant's argument and no error on the part of the hearing officer.
Finally, appellant complains that the hearing officer erred in allowing Gretchen Montero, a person not listed on defendant's pre-trial order, to testify. Appellant argues that he was taken by surprise and therefore, because counsel was unprepared for this witness, defendant was denied a fair and impartial hearing. We disagree. It is well settled that the trial court has much discretion in determining whether to modify its pre-trial order. Tassin v. Cigna Insurance Comp., 583 So.2d 1222 (La.App. 3rd Cir.1991); Levy v. Our Lady of the Lake Regional Medical Center, 546 So.2d 592 (La.App. 1st Cir.1989), writ denied, 550 So.2d 653 (La.1989). Further, the substance of Ms. Montero's testimony was hardly a surprise. Defendant used Crawford and Company to manage plaintiff's vocation rehabilitation, evaluation and job analysis. Ms. Eileen Figueroa, a vocational rehabilitation specialist in the employ of Crawford and Company, had been assigned Comeaux's case and managed it until just a few weeks before trial when she resigned to move out of state. Ms. Montero took over Comeaux's file at that time. Plaintiff's counsel was informed of this and was also aware that Ms. Montero desired to meet with Comeaux. Even though this meeting never took place, Ms. Montero had complete access to plaintiff's compensation file and based her testimony upon that information. It is doubtful whether Ms. Figueroa would have answered any differently and, if counsel for plaintiff was ready to cross-examine Ms. Figueroa, we fail to see how he would have been unprepared for Ms. Montero. This argument is also without merit.
Accordingly, for the reasons stated, the judgment of the hearing officer is affirmed at appellant's cost.
AFFIRMED.