662 So.2d 843 (1995)
Elton E. MASON, Plaintiff-Appellant,
v.
AUTO CONVOY, Defendant-Appellee.
No. 27444-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1995.
*844 Jack M. Bailey, Jr., Shreveport, for Appellant.
Cook, Yancey, King & Galloway by Sidney E. Cook, Jr. and S. Price Barker, Shreveport, for Appellees, Auto Convoy and Reliance Insurance Co.
Before MARVIN and WILLIAMS, JJ., and CLARK, J. Pro Tem.
MARVIN, Chief Judge.
Elton Mason appeals a judgment of the Workers Compensation Hearing Officer (WCHO) that denied Mason's demands for additional w.c. benefits, on the finding that *845 Auto Convoy had properly paid all benefits to which Mason was entitled because Mason had retired.
We affirm.

FACTS
Elton Mason was injured in the course and scope of his employment as a truck driver with Auto Convoy on September 4, 1989. He initially saw Dr. W.W. Fox, an orthopedist, on September 12, 1989. He saw Dr. Fox regularly, and his visits coincide with Dr. Fox's notes of when he should return. On April 19, 1990, Dr. Fox recommended a CAT scan and a lumbar myelogram, and scheduled Mason for another opinion with Dr. Carl Goodman. After Mason refused the myelogram and CAT scan, Dr. Fox began treating him with physical therapy. Dr. Fox reported to Auto Convoy's w.c. insurer on September 4, 1990, that Mason was released to return to light or sedentary employment having reached maximum medical improvement.
After Dr. Fox recommended the myelogram and CAT scan on April 19, Mason saw Dr. Goodman on April 27, 1990. Dr. Goodman returned Mason to Dr. Fox for follow-up treatment. Mason saw Dr. Goodman three other times, August 22, 1990, February 18, 1991, and April 20, 1993. On the last visit Dr. Goodman reported that Mason had reached maximum medical improvement.
Mason wrote a letter dated July 23, 1990, to Auto Convoy stating he was retiring effective August 31, 1990. He testified he sent a copy of the letter to the Teamsters Union, of which he is a member. The letter had its desired effect, allowing Mason to receive his union pension.
Auto Convoy paid Mason w.c. benefits through October 27, 1992. Auto Convoy classified these payments as temporary total disability benefits (TTDs) until October 3, 1990, after Dr. Fox's letter of September 4, 1990, and as supplemental earnings benefits (SEBs) thereafter. The checks dated before October 3, 1990, are labeled "TTD" or "temporary indemnity." The checks dated October 3, 1990, to October 27, 1992, are labeled "permanent indemnity."
Mr. Fred Blohm, the branch supervisor of GAB, the claims adjuster for Auto Convoy's w.c. insurer, testified that Louisiana is the only state among the many served by GAB using the SEB designation. GAB's computerized check printing and signing machines do not preprint the SEB designation. Because of the volume of checks printed, it would be impractical to print the designation manually.
Auto Convoy stopped paying Mason w.c. benefits believing Mason had retired within the meaning of LRS 23:1221(3)(d)(iii). This decision was not based on the letter alone. Blohm testified about the other factors considered in this determination. Mason had moved from Shreveport to Monticello, Miss., a rural community about one-tenth the size of Shreveport. He began receiving his union pension. He stopped going to the doctor. Mason made no effort to locate alternate employment. The medical reports from his doctor, Dr. Greg Wood of Jackson, Miss., referred to Mason as a retired truck driver, and a typewritten claim form sent from Dr. Wood's office to the insurer had "retired" typed into the space designated for Mason's employer.
The WCHO found that Mason had retired effective August 31, 1990; that after he retired, he received 104 weeks plus additional weeks of SEBs; that the payments Mason received after he reached maximum medical improvement and was released to light and sedentary work by Dr. Fox on September 4, 1990, were SEBs and not TTDs; and that even if these checks were for TTDs, Auto Convoy would be entitled to receive a credit for TTDs paid against SEBs owed.

DISCUSSION
Mason assigns 16 errors which we consolidate into two issues relating to whether Mason was retired within the meaning of the statute and whether the later benefits paid were SEBs.
The factual findings of the WCHO are subject to the manifest error standard of review and will not be set aside on appeal unless clearly wrong. Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 2/28/94), *846 633 So.2d 129; Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733.

Meaning of Retirement
In his assignments 2, 6, 7, 10, 11, 14, and part of assignment 1, Mason argues that he has not in fact retired within the contemplation of the w.c. statute.
LRS 23:1221(3)(d)(iii) states:
(d) The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
(iii) When the employee retires or begins to receive old age insurance benefits under Title II of the Social Security Act, whichever comes first; however, the period during which supplemental earnings benefits may be payable shall not be less that one hundred four weeks.
A worker retires under LRS 23:1221(3)(d)(iii) when the worker either withdraws from the work force or receives the old age Social Security benefits, whichever first occurs. Allen v. City of Shreveport, 93-2928 (La. 5/23/94), 637 So.2d 123. Resolving a conflict between the second and third circuits, Allen stated that it was not necessary for the worker to have permanently withdrawn from the work force in order to be said to have retired. Compare Breaux v. Travelers Ins. Co., 526 So.2d 284 (La.App. 3d Cir.1988), and Allen v. City of Shreveport, 626 So.2d 854 (La.App.2d Cir.1993). The determination of whether an employee has withdrawn from the work force is based on many factors, including age, but the circumstances of each case should control. Allen, who was only 55 years old, was held not to have withdrawn from the work force under the peculiar circumstances of his case.
Because Mason is not drawing old age Social Security benefits, our inquiry is whether the record circumstances of his case allow the conclusion that he had withdrawn from the work force.

Admission of Documents
Mason's attorney objected to the introduction of a typed health insurance claim form on which a space marked for the employer's name was filled in "retired," saying no foundation had been laid. This form was received by GAB from Dr. Wood's office in Mississippi. Blohm testified that the receipt of this document was one of the things considered in declaring Mason retired; however, it was just one factor in the calculus. Mason did not object to Blohm's testimony about the document and its contents. Any assumed error in admitting this document is harmless.

Withdrawal from the Work Force
Mason asserts that an injured employee in his position is not retired within the meaning of LRS 23:1221(3)(d)(iii). Mason describes himself as a 63-year-old worker, entitled to SEBs, released to light or sedentary employment but unable to find work, not offered work, not offered rehabilitation, waiting to see if he needs surgery, not receiving Social Security retirement benefits, who voluntarily resigned to preserve union seniority rather than waiting to be fired. He argues that the insurance company should not be allowed the latitude to classify him as retired.
The record, however, shows that Mason's actions and words were contrary to his description of himself and his arguments on appeal. He moved to his one-acre lot in Monticello, Miss., after writing the letter in mid-1990, quoted infra, to his employer. He has not looked for work, but has been living on the pension he is being paid by his union. He routinely mows his Monticello lot with a bushhog and has made a flowerbed for his wife. They make visits to their daughters in Texas and Indiana. On this record, we cannot say the WCHO was clearly wrong in concluding that Mason had withdrawn from the work force, making him retired within the meaning of LRS 23:1221(3)(d)(iii) and Allen, supra, 93-2928 (La. 5/23/94), 637 So.2d 123.
In his brief to this court, Mason states the July 23, 1990, letter has been "mischaracterized" as a retirement letter. The letter reads:
This is to serve notice to you of my impending retirement. I have notified Teamster Local 568 that I wish to retire on 8-31-90.

*847 It has been a pleasure working for Allied Syestems [sic] for the past six years. It has also been a learning experence [sic], I started hauling cars on a four car rig, look where we are today.
I want to wish my fellow drivers a fond farewell and to keep on hanging chains and watch out for those nit picking dealers that make that damage ratio go up. I especially want to say farewell to Gilbert Ray. I will always remember him as the finest Safety Director I have ever worked under. He sure knows how to keep a dull safety meeting lively. He is also direct and to the point. When you ask him something you get a streight [sic] answer. I might not always like it, but I know its [sic] right.
As you know I have been on CJI for the past 10 months. I do not feel that my condition will improve in the near future. However if the doctors do declare me able to return to work. [sic] I intend to cancel my retirement and return to work in my regular position.
Heres [sic] wishing you all the best of luck, (keep on looking up-He is surely looking down). I hope to see some of you on the road, however I won't be driving a portable parking lot. I will be driving a bright red deisel [sic] pick-up pulling a long camper if my back will hold out. So long after forty years on the road, its [sic] time to hang it up.
Characterizing this letter as a retirement letter is not manifestly erroneous or clearly wrong. Despite counsel's reliance on the speculative statement that Mason intends to return to his regular position if released to do so by his doctors, the letter taken as a whole and construed in the most reasonable sense, is indeed a retirement letter. The fact that Mason testified three years after the letter that he would like to return to the work force, and that an additional two years and seven months in a Teamsters union job would bring him an additional $800 monthlyadmittedly a great incentive to return to the work forceare not sufficient to show he did not withdraw, at least temporarily, from the work force as of August 31, 1990. See Allen, supra, 93-2928 (La. 5/23/94), 637 So.2d 123.
Mason's arguments about how the WCHO's ruling will affect others whom he labels "similarly situated" are flawed. The facts relied upon by the w.c. insurer to conclude Mason had retired are based on Mason's own words and actions and not solely on the employer's declaration of his status. Mason wrote the letter stating he was retiring, he told a doctor in Mississippi he was a retired truck driver, a health insurance claim form says retired in the space left open for Mason's employer. Mason moved back to his home in rural Mississippi, did not actively seek employment, and openly conducted himself as a "retiree," while drawing his union pension. These facts allow the reasonable conclusion that Mason has withdrawn from the work force, at least temporarily during the period in question, and he may therefore be deemed to have retired during that period within the meaning of the statute.
The record supports that WCHO's finding that Mason retired as of August 31, 1990. His assignments relating to that finding are without merit.

Payment of SEBs
In his assignments of error numbered 3, 4, 5, 8, 9, 12, 13, 15, 16, and part of assignment 1, Mason asserts that the WCHO committed manifest error in finding Mason had been paid all the SEBs to which he was entitled.

Nature of the Benefits to which Mason was Entitled
When a claimant reaches maximum medical improvement and is released to return to work, TTDs are no longer owed. This is because when the employee is released to return to work, albeit with restrictions, he is deemed to be able to engage in some self-employment or gainful occupation for wages as contemplated by LRS 23:1221(1). See Bradley v. Justiss Oil Co., Inc., 618 So.2d 646 (La.App.2d Cir.1993). The claimant is entitled to SEBs when he is unable to earn wages equal to ninety percent or more of his pre-injury wages. LRS 23:1221(3)(a). Dr. Fox stated that Mason reached maximum medical improvement and was released to return to light or sedentary work as of September 4, 1990. There is no clear error in the WCHO's finding that Mason *848 was entitled only to SEBs after that date.
Mason asserts he did not reach maximum medical improvement until April 20, 1993. On that date Dr. Goodman stated he had reached maximum medical improvement. However, Dr. Goodman also noted that he had not seen Mason for more than two years. Dr. Fox, and not Dr. Goodman, routinely and periodically treated Mason for this injury. It was not clear error for the WCHO to rely on Dr. Fox's statement as to when Mason reached maximum medical improvement. This is especially true in light of the fact that Mason saw Dr. Goodman only four times at extended intervals.
Moreover, Mason's brief acknowledges that Mason "should have received temporary total disability benefits until 9-1-90 when he was released to return to work at sedentary employment," a date corresponding with Dr. Fox's reports, not Dr. Goodman's.
In brief, Mason argues that not only has Auto Convoy failed to pay him SEBs, it has also failed to offer him any rehabilitation or to show that any job was offered or available through a market survey or otherwise. The goal of the statutory rehabilitation is to return a disabled worker to work as soon as possible after an injury occurs. LRS 23:1226 B(1). We conclude that an employee who has retired because he has withdrawn from the work force has no need for rehabilitation or a job market survey. These benefits are provided to an employee who aspires to return in some capacity to the work force under the goal or scheme of the statute. An employee who has retired should not be considered as aspiring to return to the work force, according to our understanding of the statutory scheme.

Classification of the Payments Received
Mason asserts the WCHO erred in rulings that he had received anything other than TTDs (the 104 weeks of SEBs) and that Auto Convoy had met its burden of showing it paid SEBs. The WCHO found as fact that the checks received between the time Mason was released by Dr. Fox in September, 1990, and October 27, 1992, were SEBs. On this record we cannot say this is clear error. Blohm's testimony about the number of checks issued and the manner in which GAB issued them, together with the notations on the checks themselves, supports this finding.
The WCHO stated that if these payments are considered TTDs, Auto Convoy is entitled to a credit for surplus TTDs paid against SEBs owed under LRS 23:1223(B). This was not the law in effect for Mason's circumstances. The w.c. law in effect on the date of the worker's injury is controlling. Hill v. L.J. Earnest, Inc., 568 So.2d 146 (La.App.2d Cir.1990), writ denied. LRS 23:1223(B) became effective January 1, 1990, after Mason's September 4, 1989, injury. This statute is substantive and will not be applied retroactively. Thibodeaux v. Diamond M Drilling Company, 93-2963 (La. 2/25/94), 632 So.2d 736. Having found no manifest error in the WCHO's determination that payments after September 4, 1992, were for SEBs, the WCHO's error is of no consequence and is deemed harmless.

Notice and Retroactivity of the Reclassification
LRS 23:1201 G requires the insurer to give notice to the Office of Worker's Compensation, by filing a form 1002, if it modifies the character of the benefits it pays. Mason argues that because Auto Convoy failed to notify either him or the OWC of the change in classification, Auto Convoy is not entitled to claim that any payments were SEBs. Mason asserts that allowing Auto Convoy to claim the checks were SEBs without having notified him or the OWC of the change deprived him of notice and an opportunity to challenge the reclassification. The statute requires that the notice on the form be given to the OWC, not to the claimant. The change from "temporary indemnity" to "permanent indemnity" in the notations on the checks should have alerted or served as notice to Mason or any recipient that a change in the character of the benefits being paid had occurred. Mason was not deprived of the opportunity to challenge the reclassification of benefits for indeed he is challenging the reclassification in the instant proceedings. The issue was raised in the trial court *849 in Comeaux v. City of Ville Platte, 617 So.2d 1313 (La.App. 3d Cir.1993), but not discussed in the appellate opinion. The obvious purpose of the statutory requirement of notice to the OWC is to allow the OWC to notify the claimant of the change and to allow formal objection to the change.
There is no clear error in the WCHO's finding that Mason was entitled to SEBs after September 4, 1990, and that he has received all such payments to which he is entitled. The assignments in this area are meritless.

DECREE
At appellant's cost, the judgment of the WCHO is
AFFIRMED.